IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| Comcast IP Phone of Missouri, LLC; Comcast IP Phone, LLC; Comcast Phone of Missouri, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 06-4233-CV-C-NKL |
| The Missouri Public Service Commission; Jeff Davis, Connie Murray, Steve Gaw, Robert M. Clayton III, and Linward Appling, in their official capacities as commissioners of the Missouri Public Service Commission and not as individuals, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court is Plaintiffs Comcast IP Phone of Missouri, LLC, Comcast IP Phone, LLC and Comcast Phone of Missouri LLC's (collectively, "Comcast") Motion for Preliminary Injunction [Doc. # 2]. The Defendants are the Missouri Public Service Commission and Jeff Davis, Connie Murray, Steve Gaw, Robert M. Clayton III and Linward Appling (collectively, "MoPSC"), all of whom are sued in their official capacity as commissioners of the Missouri Public Service Commission. Comcast seeks an order enjoining MoPSC from proceeding with the action *Staff of the Public Service Commission of the State of Missouri v. Comcast IP Phone, LLC* ("Staff

1

Complaint"), Case No. TC-2007-0111, which is currently pending against Comcast before the Missouri Public Service Commission.

As discussed below, Comcast specifically asks the Court not to consider any factual or technical issues. Comcast's sole request is that the Court find, as a matter of law, that the MoPSC is without legal authority to classify as a telecommunications service Comcast's Voice Over Internet Protocol ("VoIP") service. Comcast maintains that only the Federal Communications Commission ("FCC") is empowered to classify its VoIP service, and that in the absence of FCC action, VoIP remains wholly unclassified. Accordingly, the issue in this case is whether MoPSC is preempted from regulating Comcast's VoIP service prior to the FCC determining the regulatory framework of VoIP services. Because Comcast and the MoPSC disagree only on a question of law, the Court considers Comcast's Motion for Preliminary Injunction as one for a permanent injunction and refers to the Motion as such throughout the Order. *Bank One v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999) (holding that the court may consider a motion for a preliminary injunction as one for a permanent injunction if the parties disagree only on questions of law).

For the reasons set forth herein, Comcast's Motion for Permanent Injunction will be denied.

I. **Background**

On September 21, 2006, the staff of the Public Service Commission filed a complaint against Comcast before the Missouri Public Service Commission. In its

2

complaint, the staff requested that the Missouri Public Service Commission "make a finding that Comcast is providing local exchange and interexchange telecommunications service within the State of Missouri without the requisite certificate of service authority" in violation of Missouri Statute 392.410.2. [Defs' Opp. at 2.] In addition, the staff requested that the Commission's general counsel be authorized to sue Comcast in state court to recover "the maximum statutory forfeiture allowed by section 392.360 RSMo." [Staff Complaint at 5.]

On October 10, 2006, Comcast filed its Complaint [Doc. # 1] in this Court seeking "preliminary and permanent injunctive relief from the MoPSC's attempt to exercise jurisdiction over Comcast's Digital Voice offering and to impose upon Comcast state regulatory requirements prior to the Federal Communications Commission ('FCC') determining the appropriate regulatory framework, if any, for offerings such as Digital Voice." [Comcast Complaint ¶ 1.]

Digital Voice is Comcast's VoIP service. According to the Federal Communications Commission ("FCC"),

> VoIP technologies, including those used to facilitate IP telephony, enable real-time delivery of voice and voice-based applications. When VoIP is used, a voice communication traverses at least a portion of its communications path in an IP packet format using IP technology and IP networks. VoIP can be provided over the public Internet or over private IP networks. VoIP can be transmitted over a variety of media (e.g., copper, cable, fiber, wireless). Unlike traditional circuit-switched telephony, which establishes a dedicated circuit between the parties to a voice transmission, VoIP relies on packet-switching, which divides the voice transmission into packets and sends them over the fastest available route. Thus, VoIP uses available bandwidth more

3

efficiently than circuit-switched telephony and allows providers to
maintain a single IP network for both voice and data.

*In the Matter of Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges* ("*AT&T Order*"), 19 F.C.C.R. 7457 ¶ 6 (2004).

VoIP technology has also been described as that which "converts the contents of a particular communication into digital packets of information, which it then sends over private networks or over the internet to an end user. These separate packets of information run through various computers, routers, and switches anywhere in the world, and are then 'reconstituted' at the destination." *Frontier Telephone of Rochester, Inc. v. USA Datanet Corp.*, 386 F. Supp.2d 144, 145 (W.D.N.Y. 2005).

In 2004, the FCC opened a rulemaking proceeding to comprehensively address the regulatory and policy issues related to VoIP services. *In the Matter of IP-Enabled Services* ("*IP-Enabled Proceeding*"), 19 F.C.C.R. 4863 (2004). However, the FCC has not yet adopted any VoIP rule. At this time, there is no certainty about when or if a comprehensive rule covering the issue before the MoPSC will be adopted by the FCC.

**II.     Discussion**

In order to prevail on its Motion for Permanent Injunction, Comcast must show the following: (1) actual success on the merits; (2) that it faces irreparable harm; (3) the harm to it outweighs any possible harm to others; and (4) an injunction serves the public interest. *Guttau*, 190 F.3d at 847 ("The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent

4

injunction the movant must attain success on the merits."); *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (noting the preliminary injunction standards).

### A. Actual Success On The Merits

Comcast asks the Court to find that state regulation of VoIP services are preempted by the FCC. But, as discussed below, Congress' intent to allow states to regulate intrastate telecommunications services is clear. Furthermore, state agencies, such as MoPSC, are capable of interpreting federal statutes necessary to classify communications services as either telecommunications or information services. Finally, the FCC did not preempt the entire field of VoIP regulation by beginning its *IP-Enabled Proceeding*. Accordingly, Comcast cannot show actual success on the merits.

#### 1. The MoPSC is authorized to regulate intrastate telecommunications services.

Comcast argues that Congress expressed a clear intent to preempt any action by the MoPSC in this case by creating the FCC, whose purpose is to "execute and enforce the provisions of the [Telecommunications Act of 1996]." 47 U.S.C. § 151. [Mot. at 7.] Though Congress delegated to the FCC the authority to regulate interstate wire and radio communications, it specifically denied the FCC jurisdiction to regulate intrastate communication services, leaving that authority with the states. 47 U.S.C. § 152(b); *see generally* Telecommunications Act of 1996 ("1996 Act"), 47 U.S.C. § 151 *et seq.* For its part, Missouri delegated to the PSC the authority to regulate telephone companies that provide intrastate communications services in Missouri. Mo. Rev. Stat. § 386.250. Therefore, the FCC's creation is not indicative of Congressional intent that federal law

5

preempt state regulation of VoIP services if such services constitute intrastate communications services.

### 2. The MoPSC may interpret a federal statute.

Despite Congress' delegation of authority over intrastate communications to the states, the MoPSC's regulation of Comcast's Digital Voice is preempted by federal law if Digital Voice is an "information service," as opposed to a "telecommunications service."[1] 47 C.F.R. § 64.702(a); *In the Matter of Petition for Declaratory Ruling that Pulver.com's Free World Dialup is Neither Telecommunications nor a Telecommunications Service* ("*Pulver.com Order*"), 19 F.C.C.R. 3307, ¶ 1 (2004); *see generally Vonage Holdings Corp. v. Minnesota Public Utilities Comm'n*, 290 F. Supp.2d 993, 998-999 (D. Minn. 2003).

Comcast does not dispute that the MoPSC may regulate intrastate telecommunications services. Instead, Comcast argues that the MoPSC is without authority to decide whether Digital Voice is in fact a telecommunications service subject to state regulation. Thus, as a threshold matter, the Court must determine whether MoPSC has the authority to decide whether Digital Voice is a telecommunications service.

A federal statute provides the definition of a telecommunications service. 47 U.S.C. § 153(46). It is well settled that a federal agency's interpretation of a federal

---

[1] Comcast has not asked the Court to determine whether its Digital Voice service is a "telecommunications service" or an "information service." Comcast also has not asked the Court to determine the extent to which Digital Voice is comparable to VoIP services provided by other companies.

6

Case 2:06-cv-04233-NKL   Document 20   Filed 01/18/07   Page 6 of 12

statute within its administrative realm is entitled to deference by the courts and the states. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44, 104 S. Ct. 2778 (1984) (requiring court to give "controlling weight" to federal agency legislative regulations "unless they are arbitrary, capricious, or manifestly contrary to the statute"). On the other hand, a state agency may interpret a federal statute but its "determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency." *Amisub (PSL), Inc. v. Colorado Dep't of Social Servs.*, 879 F.2d 789, 795-96 (10th Cir. 1989). Thus, if the FCC and MoPSC differed as to whether Digital Voice is a telecommunications service, then the FCC's interpretation would prevail.

Comcast, however, argues that MoPSC cannot classify Digital Voice as a telecommunications service unless and until the FCC determines that Digital Voice is a telecommunications service. In so doing, Comcast argues the MoPSC has impermissibly placed itself in the role Congress allocated to the FCC. [Pls' Reply at 17.] In essence, Comcast argues that if the FCC never classifies Digital Voice as either a telecommunications service or an information service, then Digital Voice will forever go unregulated.

While the absence of a federal regulation may "imply an authoritative federal determination that the area is best left unregulated," *Arkansas Elec. Coop. Corp. v. Arkansas Public Serv. Comm'n*, 461 U.S. 375, 384, 103 S. Ct. 1905 (1983), the Court is unaware of any such intent by lawmakers in this instance. Indeed, federal courts, as well

as the FCC, have discussed the characteristics and regulation of telecommunications services (including VoIP services). *See, e.g., Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 125 S. Ct. 2688 (2005); *Pulver.com Order*, 19 F.C.C.R. 3307; *AT&T Order*, 19 F.C.C.R. 7457.

Accordingly, the Court finds that Congress did not intend for VoIP services to be completely unregulated. And, unless preempted or faced with a contrary decision from a relevant federal agency, a state agency may interpret a federal statute and apply its dictates. Therefore, in the absence of preemption or a contrary determination by the FCC, the MoPSC has jurisdiction to decide whether Digital Voice is a telecommunications service.

### 3. State regulation is preempted only when it is impossible to separate interstate from intrastate telecommunications.

The FCC has authority to preempt state regulation if it is not possible to separate the interstate and intrastate components of a particular telecommunications service. *Qwest Corp.*, 380 F.3d at 370-71.

In its *Vonage Order*, the FCC preempted state regulation of Vonage's VoIP service because it "cannot be separated into interstate and intrastate communications for compliance with Minnesota's requirements without negating valid federal policies and rules." *In the Matter of Vonage Holdings Corporation Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission* ("*Vonage Order*"), 19 F.C.C.R. 22404 at ¶ 1 (2004). The FCC further stated that "[t]o the extent other entities, such as cable companies, provide VoIP services, we would preempt state

8

regulation to an extent comparable to what we have done in this Order." *Id*. at ¶ 46. The FCC, however, did not declare that all VoIP services could not be separated into interstate and intrastate communications. Furthermore, Comcast has not asked the Court to determine whether its service could be separated into interstate and intrastate communications. Nor has Comcast asked the Court to compare Comcast's Digital Voice to the services at issue in *Vonage*. Therefore, the Court is unable to find that MoPSC is preempted from classifying, or potentially regulating, Comcast's Digital Voice service on the ground that it cannot be separated into interstate and intrastate components.

### 4. The FCC has not preempted the entire field of VoIP services.

Comcast argues that "the MoPSC's attempt to enforce state regulations against Comcast's VoIP service stands as an obstacle to the accomplishment and execution of the full objectives of Congress–i.e., that the FCC (not the MoPSC) is the 'centralizing authority' to 'execute and enforce the provisions of the [1996 Act]'" and that the internet remain unfettered by regulation. [Mot. at 8-9.] As discussed in a previous section, Comcast's argument fails to recognize that the 1996 Act specifically delegates to states the right to regulate intrastate telecommunications services–a clear indication of Congressional intent. Furthermore, the FCC has not preempted the entire filed of VoIP services and, in at least one case, determined that a VoIP service was a "telecommunications service."

The FCC has opened a rulemaking proceeding (*IP-Enabling Proceeding*) to comprehensively address the regulatory issues pertaining to VoIP services. To date, the

9

FCC has issued six orders pertaining to VoIP services. *See Pulver.com Order*, 19 F.C.C.R. 3307; *AT&T Order*, 19 F.C.C.R. 7457; *Vonage Order*, 19 F.C.C.R. 22404; *In the Matters of IP-Enabled Services; E911 Requirements for IP-Enabled Service Providers* ("*E911 Order*"), 20 F.C.C.R. 10245 (2005); *In the Matter of Communications Assistance for Law Enforcement Act and Broadband Access and Services* ("*CALEA Order*"), 20 F.C.C.R. 14989 (2005); *In the Matter of Universal Service Contribution Methodology* ("*USF Order*"), 2006 WL 1765838 (2006). The FCC, however, has not preempted the entire field of VoIP services.

If the FCC declared that all VoIP services were "information services" and not "telecommunications services," then the MoPSC would have no jurisdiction over any VoIP service, including Digital Voice. In its *Pulver.com Order*, the FCC declared Pulver.com's Free World Dialup service to be an unregulated information service, and thus, subject to the FCC's jurisdiction. *Pulver.com Order*, 19 F.C.C.R. 3307 ¶ 1. But, in its *AT&T Order*, the FCC classified AT&T's "phone-to-phone" VoIP service as a telecommunications service subject to regulation. *AT&T Order*, 19 F.C.C.R. 7457 at ¶¶ 1, 6. The FCC has made no sweeping decision with respect to all VoIP services. *E911 Order*, 20 F.C.C.R. 14989 at ¶ 22 ("[W]e have not decided whether interconnected VoIP services are telecommunications services or information services."); *USF Order*, 2006 WL 1765828 at ¶ 35 ("The Commission has not yet classified interconnected VoIP services as 'telecommunications services' or 'information services.'"). Accordingly, the Court is unable to find that the FCC has declared all VoIP services to be information

10

services. Furthermore, the fact that the FCC has opened a rule-making proceeding is not an expression of the FCC's intent to preempt the entire field of VoIP services. Therefore, the Court is unable to find that the FCC has preempted the entire field of VoIP services or that allowing state regulation of intrastate telecommunications services, which also happen to be VoIP services, stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

### B. Primary Jurisdiction

The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (quotation omitted). The doctrine promotes consistency and uniformity within an area of regulation. *Id.*

In *Frontier*, 386 F. Supp.2d 144, the district court held that the doctrine of primary jurisdiction applied and stayed the matter before it pending a relevant decision by the FCC. At issue in *Frontier* was the technical question of whether VoIP providers are required to pay access charges to local exchange carriers. *Id.* at 146.

Unlike the *Frontier* case, no technical issues have been presented to this Court. Comcast has not requested that the Court decide whether Digital Voice is a telecommunications service or an information service, nor did it request a determination that Digital Voice's interstate and intrastate communications were inseparable.

11

Furthermore, to the extent Comcast argues that this Court should stay the MoPSC's action on the ground that the FCC has primary jurisdiction, Comcast has presented no evidence that the MoPSC lacks the technical expertise to resolve the question of whether Digital Voice is an information or telecommunications service. Therefore, the doctrine of primary jurisdiction is inapplicable to this case.

### C. Irreparable Harm, Balance of Harm and the Public Interest

Comcast has not shown actual success on the merits. Accordingly, the Court need not address its irreparable harm, balance of harm and public interest arguments prior to denying its Motion for Permanent Injunction.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Comcast's Motion for Permanent Injunction [Doc. # 2] is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: <u>January 18, 2007</u>
Jefferson City, Missouri